NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 16, 2016
Decided December 6, 2016

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 16-1330

| | |
|---|---|
| JOHN W. MITTVICK, et al., *Plaintiffs*, | Appeal from the United States District Court for the Northern District of Illinois, Western Division. |
| and | |
| | No. 99 CV 50143 |
| ROBERT K. NEUMAN *Proposed Plaintiff-Intervenor-Appellant*, | Philip G. Reinhard, *Judge*. |
| *v.* | |
| STATE OF ILLINOIS, et al., *Defendants-Appellees*. | |

**O R D E R**

Robert Neuman wants to intervene as a plaintiff in a case that, according to the district court's docket, was dismissed sixteen years ago. Neuman's attorney attempts to justify this extraordinary request by contending that the case was never really dismissed, that Neuman just recently learned about the case, that the defendants would not be prejudiced by intervention, and that the defendants tricked the plaintiffs into pausing the

litigation. The district court denied Neuman's petition because the case was indeed properly dismissed sixteen years ago, so there is no case in which Neuman can now intervene. We affirm.

Over twenty years ago, in 1992, white men who were denied employment or promotion by the Illinois State Police sued, claiming that the agency had violated their equal-protection rights and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2. *See Koski v. Gainer*, No. 92 C 3293, (N.D. Ill. Nov. 19, 1993). The district court certified a class of approximately 5,000 applicants, with Aaron Booker as class representative, under FED. R. CIV. P. 23(b)(2), the provision primarily used for injunctive or declaratory relief. *Bishop v. Gainer*, 272 F.3d 1009, 1018 (7th Cir. 2001); *Koski v. Gainer*, No. 92 C 3293, 1993 WL 153828, at *1, *4–*5 (N.D. Ill. May 6, 1993). Kimberly Sutherland represented the class. After a bench trial the district court found for the class on some of their claims, ruling that the Illinois State Police's hiring practices discriminated against white men by requiring their test scores to be higher than those of women or racial minorities. *Koski v. Gainer*, No. 92 C 3293, 1997 WL 619858, at *3 (N.D. Ill. Sept. 30, 1997). Neuman was an absent class member.

On appeal to this court on the issue of relief, we wrote that Sutherland's choice of language contributed to confusion about what monetary relief the district court had intended to order. *See Bishop v. Gainer*, 272 F.3d 1009, 1018 (7th Cir. 2001) (noting that the district court and the plaintiffs sometimes referred specifically to back pay but other times only more ambiguously to damages). Because the class was certified under Rule 23(b)(2), we explained that the class members could recover only equitable relief. *Id.* at 1017–18. Although back pay could be included in equitable relief, other forms of monetary relief could not because the class was not certified under Rule 23(b)(3). *Id.* We ultimately allowed class members to file separate, individual claims for back pay or other monetary relief. *Id*. at 1019–20. The class petitioned the Supreme Court for certiorari on the issue of class-wide relief, but the Court denied the petition in 2002. *Booker v. Illinois*, 535 U.S. 1055 (2002).

Before we had decided that earlier appeal, two class members—John W. Mittvick and Edward Urban—filed the suit underlying the current appeal. This second suit, filed in 1999, raised the same claims as in the 1992 case but also asserted a class under Rule 23(b)(3). The complaint sought a variety of damages, including monetary relief, that at the time was debatably unavailable in the 1992 case. The case was short-lived. The docket entry for November 17, 1999, reflects a minute order by the magistrate judge that

states: "Plaintiff's oral motion to dismiss this case without prejudice pursuant to FRCP 41(a) is granted."

Almost sixteen years after the district court entered the order "dismiss[ing] the [1999] case," Neuman, who is represented by Sutherland, asked to intervene in it. The Illinois State Police had hired him in 2001, after the district court ruled in favor of the class (of which he was a member) in the 1992 case. In his petition to intervene in the 1999 case, he seeks "back pay and damages, on behalf of the successful absent members" of the class in the 1992 case.

The district court rejected Neuman's arguments for intervention. First, Neuman contended that the 1999 case had never been dismissed because the district court had granted only "*[p]laintiff's* oral motion to dismiss" (emphasis added). The singular apostrophe, he argued, meant that the court had dismissed only the claims of one of the two named plaintiffs. Second, Neuman contended that the court could not have validly dismissed the case without notifying absent class members of the dismissal, which it did not do. Third, with the case still alive, he maintained that intervention was proper: the petition was timely because he had learned about the case only in 2015; intervention would not prejudice the defendants because the case never had advanced beyond the pleading stage; he would be prejudiced if he was *not* allowed to intervene; and, because the state had lied to the plaintiffs almost sixteen years ago, he may enter the case now. The district court ruled, however, that the 1999 case had been validly dismissed over sixteen years earlier, so intervention was not possible.

Repeating the arguments that he raised in the district court, Neuman maintains in this court that the district court erred in denying his motion to intervene. But each argument he now raises is meritless.

We begin with Neuman's contention that the case is open. This case closed in 1999, when the judge granted "[p]laintiff's oral motion to dismiss this case. . . ." The object of this sentence is "the case." That means that a plaintiff asked the court to dismiss, and the court dismissed, "the case," not just one plaintiff's claims in it. After this docket entry, nothing further happened for almost sixteen years; the court, the parties, and their attorneys acted as though the case was closed. In determining if a ruling is the final one in a case, "[t]he test is not the adequacy of the judgment but whether the district court has finished with the case." *Chase Manhattan Mortg. Corp. v. Moore*, 446 F.3d 725, 726 (7th Cir. 2006). Thus the case was, and is, over.

Neuman responds that the dismissal was invalid because the district court did not notify putative class plaintiffs of the proposed dismissal. But even if such notice was required and not provided (a point we need not address), the lack of notice does not help Neuman intervene now. For one thing, if the district court erroneously dismissed the case in 1999, that supposed error might have created an appealable issue for the plaintiffs or a proposed intervenor back then; it would not keep the case open forever. In any event, when a person attempts to intervene in a case by right or permission, the petition must be "timely," and the district court's ruling about timeliness is reviewed for abuse of discretion. FED. R. CIV. P. 24; *see also Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 949 (7th Cir. 2000) (permissive intervention); *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 773 (7th Cir. 2007) (intervention as of right). The test for timeliness is independent of the statute of limitations of the substantive claim and has four factors: "(1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; (4) any other unusual circumstances*." Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 797–98 (7th Cir. 2013) (quoting *Sokaogon Chippewa Cmty.*, 214 F.3d at 949). The district court reasonably found that Neuman's petition fails on all four factors.

Neuman loses on the first factor because he could have tried to intervene over fifteen years ago and he has no good excuse for his delay. He asserts that in 2001 an attorney (whose name he does not recall) told him, and the docket from the 1992 cases suggests, that he could not sue separately for damages from the conduct underlying the 1992 case. He adds that he did not learn about the 1999 case until 2015, when Sutherland found him. But in 2001, when the unnamed attorney said that Neuman could not sue separately for damages, a diligent member of the 1992 class would have contacted Sutherland, the class attorney of record, to ask about the prospect of another suit. Had Neuman—himself a member of that 1992 class—done this, Sutherland could have alerted him then to the 1999 case. His fifteen-year delay is thus attributable to his own lack of diligence.

We have upheld a district court's decision to deny intervention to proposed intervenors who, through lack of diligence, delayed for a similarly prolonged period. *See Lewis v. City of Chicago, Illinois*, 702 F.3d 958, 963 (7th Cir. 2012) (fourteen-year delay). Sutherland knows that a several-year delay in asking to intervene in pending cases can justify denying the request. She represented proposed intervenors in *United States v. City of Chicago.* 897 F.2d 243 (7th Cir. 1990). There, black female patrol officers petitioned to intervene in a pending discrimination suit seventeen years after the case began. We wrote: "Motions to intervene must be 'timely,' FED. R. CIV. P. 24(a), and this motion,

coming 17 years into the case, threatens to breathe life into a question (quotas) that has been resolved to the satisfaction of the original parties." *Id.* at 244. We concluded that it was not an abuse of discretion for the district court to reject the motion to intervene, "[e]specially not when the lawyer representing these potential intervenors appeared in 1984 to represent a group of black female officers (the Augustus class) in order to make a similar request for additional quotas." *Id.*

The second and third factors do not help Neuman either. Neuman argues that intervention in this case will not prejudice the state because nothing has ever happened in it, but that he would be prejudiced without intervention because it is now too late to sue for back pay. But the state would be prejudiced because evidence from decades ago is now stale. And Neuman had a chance to pursue back pay when this court in 2001 ruled that he could. *See Bishop*, 272 F.3d at 1019–20.

Neuman invokes the fourth factor to argue for intervention, but it too does not favor him. He contends that the named plaintiffs, Mittvick and Urban, were tricked into abandoning this case sixteen years ago. (According to him, the state falsely told the two men that they had to file their own EEOC charges, that their claims were untimely, and that they could get full relief in the 1992 case. Neuman also asserts that Mittvick's attorney lied to Mittvick about the status of his case.) Even if this is true, none of these statements was made to Neuman. So Neuman cannot validly contend that the statements delayed *his* request to intervene.

Because we conclude that the district court reasonably ruled that Neuman's petition to intervene was untimely, we need not reach the state's other arguments that Neuman's intervention was also barred by the doctrine of laches and res judicata.

Accordingly, we AFFIRM the district court's judgment.